**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Johnny B. CAMPBELL, Defendant–
Appellant.**

No. 00–5824.

United States Court of Appeals,
Sixth Circuit.

July 16, 2002.

Before GUY and BATCHELDER,
Circuit Judges; and COHN, District
Judge.*

PER CURIAM.

Defendant, Johnny B. Campbell, appeals from the refusal of the district judge to grant a downward departure in connection with Campbell's sentence as a career offender. Acknowledging that the failure to grant a downward departure is generally not appealable, Campbell argues that the district judge did not appear to be aware of his discretion to make a downward departure. Although the record of the sentencing hearing is arguably ambiguous on this point, we feel in this case the ambiguity should be resolved in favor of the defendant, and we remand for resentencing.

Defendant was charged in a two-count indictment with possession with intent to distribute cocaine and being a felon in possession of a firearm. Campbell entered a guilty plea to both counts. Due to prior narcotics convictions, defendant qualified as a career offender. At his sentencing hearing, defense counsel argued for a downward departure on the grounds that defendant was a young man when he committed the earlier offenses, that they were committed in close temporal proximity to each other, and that only small amounts of

---

* The Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation.

drugs were involved; in short, that his criminal history points overstated the seriousness of his prior criminal behavior. It is not disputed that a trial judge may depart downward, under appropriate circumstances, when imposing a career offender sentence.

At the sentencing hearing, before hearing from defense counsel, the court attempted to paraphrase her argument and then asked the government attorney to comment. The government attorney briefly replied that he did not think the criminal history was overstated "but beyond that, Your Honor, I would submit this to the Court." The trial judge then stated:

> THE COURT: All right. Well, exactly the same argument has come up before, Ms. Randle–Holt. Anything else to add to this? We're either going to have the–probably the Sixth Circuit tell us that for some reason these are incorrect calculations, which they could, I mean that is within–of course, then the Supreme Court might review their determination and correct them on that, I don't know, but we have had exactly the same issue before. Just so that, Mr. Campbell, so you know, I mean we don't make the rules here and we don't approve of them or disapprove of them, we try to follow them. What else on this matter?

Defense counsel, Ms. Randle–Holt, then proceeded to address the court arguing that the defendant was not your typical career offender. She did not argue that defendant did not qualify as a career offender. In reply the district judge said:

> THE COURT: It says career offender. A defendant is a career offender if, one, the defendant was at least 18 years old at the time that the defendant committed the instant offense of conviction. You had to get the 18 or more now. We know that's the case, we know you're well past 18.
>
> Two, the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense. Well, it is not very hard to know this is possession with intent to distribute cocaine, and it is an 841(a)(1) offense, and so it is a controlled substance offense.
>
> You also have a felon in possession of a firearm offense, but we're really looking at Count 1.
>
> Then, three, the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense. If the offense level for the career criminal from [the] table below is greater than the offense level otherwise applicable, the offense level from the table below shall apply. Career offender's criminal history category in every case shall be category VI.
>
> Well, of course, in your case, we go back and we say what is your record, that's the question. And it includes August 3, 1990, paragraph 27, selling controlled substance, to wit cocaine, three counts. The determination, that is disposition was on March the 28th, 1991. There was nine years custody imposed, forty days credit concurrent, and then, of course, it was concurrent with 90–01708, and you were–you were released on September 25th, 1991. Then there was a violation of–there was a violation warrant issued pending in connection probably with some current activity. And then you have got paragraph 28, possession of controlled substance with intent to sell cocaine, and also on March 28th, 1991, you were sentenced to two thousand dollar fine, nine years custody, 39 days credit, and it was concurrent with the previous sentence.

Now, those are two separate items. We have had them come up before and somebody will say, well, you know, they're really just the same one because they were sentenced at the same time, but, in fact, they had separate numbers, they were separate sets of facts, separate arrests and they were separate conduct, so those are two that qualify. Even if we said that, well, somehow that is counted as one, which I think is inconsistent with the current way in which the law is applied, we would still go back to paragraph 25, and that was two years custody, the sentence was imposed on May the 30th, 1989 and, of course, that was possession of a controlled substance with intent to sell, attempt–amended to attempt[ed] felony, to wit selling cocaine, and that had a two-year sentence.

*So under the career offender definition, you just fit, I mean it is one of those things where that is what the law says, and we have got two choices every time somebody comes before any judge, we can follow the law or we cannot follow the law.* Well, I took an oath to follow the law and so I intend to do that. Ms. Randle–Holt's argument is a real good one to make to the Sentencing Commission if they ever were authorized to change any of these, and maybe they would, maybe they would say we're not going to count ones where you're sentenced–they maybe change it and say, well, if you were sentenced at the same time, even though they're separate offenses, we're going to still just count them as one. That is not what the Sentencing Commission has said, I don't know if the Congress, even if they decided they wanted to say it now, would approve that. So that's our situation. The idea is pretty simple. Congress has said to us that in crimes involving drugs and crimes involving violence that we're going to impose really tough sentences.

That is what they said, and all we have to do is listen. Now, we don't have to even agree. *I'm not saying I disagree, but my job is not to comment on whether I agree or disagree with the law, they have been real clear. And Ms. Randle–Holt's argument is an argument that can best be addressed to individuals who regard themselves as policy makers.* Well, that may still include the Sixth Circuit, I don't know, but I mean if they say that you're right, then I think it is a good appeal issue. I don't know whether it is a good issue or not.

(Emphasis added.)

After this long comment by the trial judge, defense counsel stated simply that "discretion to depart, I think, is left to the sole discretion of the trial court." The court's reply was to state: "But we're not even authorized to depart on this." Defense counsel responded to the court's observation that it had no discretion by stating that she had cited to a Sixth Circuit case in her brief which indicated the trial judge did have discretion to make a downward departure. The trial judge responded:

THE COURT: The answer is real simple in my view, there are people who are going to follow the law faithfully whether they agree with it or not and there [are] some people who have trouble doing that, and sometimes we call that discretion. I don't think there is any question about what the law says, and I'm not inclined to make up the rules myself. I hear what you're saying.

MS. RANDLE–HOLT: Yes, sir.

THE COURT: And the fact that some[one] else is doing something that for some reason they think is okay, if they can go to bed at night and sleep and feel like they didn't

make it up–that's not the real test. The test is whether I know whether I did what the law required. There is no question what the book says. Kind of like people who on theological matters, you know, take these strange positions, and yet I think you have got a cross on there, that is what I'm noticing, Mr. Campbell, you know what I'm saying, some people will say, well, it is okay to do something wrong because we can rationalize it in some way. You know, do I think it is necessarily a good idea for Mr. Campbell, well, now, that is something that I will deal with in the guideline sentence itself and whether I think he needs to have a longer sentence at the end or the shorter sentence, that is the low sentence of the guidelines, *I think that is where our discretion rests.*

(Emphasis added.)

After a brief comment from defense counsel, the trial judged added:

THE COURT: Right. He's a–well, let's talk about–I have ruled on it, so I'm going to follow the rules, *and if you can get somebody else to say there is a different rule, I will follow that rule too.*

(Emphasis added.)

Although the sentencing judge does not need to affirmatively state that he knows he can depart downward and the presumption is that he is aware of his discretion, here we believe the judge and defense counsel never really joined issue on what was under discussion. It appears to us that the judge was erroneously interpreting defendant's argument to be that the nature and timing of his prior convictions were such that they should not result in his being classified as a career criminal. Additionally, the trial judge did affirmatively state that he was "not even authorized to depart."

Consistent with this statement, the judge also indicated that this was a matter for the policy makers and that he was not a policy maker. The judge explained that if the definition of what constituted a career criminal needed changing, it was a job for Congress or the Sentencing Commission. The judge concluded by stating that he thought the area in which he could exercise discretion was in determining where within the guideline range the defendant should be sentenced.

If we have misinterpreted the sentencing hearing transcript, it is a matter that can easily be cleared up on remand. Accordingly, the sentence imposed by the district court is VACATED and this matter is REMANDED for RESENTENCING.